# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| | |
|---|---|
| EYDIE G CARLSON,<br><br>        Plaintiff,<br><br>    v.<br><br>CAROLYN W COLVIN, Acting Commissioner of Social Security,<br><br>        Defendant. | CASE NO. 2:15-CV-01085-MJP-DWC<br><br>REPORT AND RECOMMENDATION<br><br>Noting Date: May 6, 2016 |

The District Court has referred this action, filed pursuant to 42 U.S.C. § 405(g), to United States Magistrate Judge David W. Christel. Plaintiff Eydie G. Carlson filed this matter seeking judicial review of Defendant's denial of her application for disability insurance benefits ("DIB").

After reviewing the record, the Court concludes the Administrative Law Judge ("ALJ") erred in finding Plaintiff's back condition did not constitute a medically determinable severe impairment at Step Two. The ALJ failed to properly consider this impairment when determining Plaintiff's residual functional capacity ("RFC") and therefore the error at Step Two was harmful. The ALJ also committed several other errors, which must be addressed on remand. Accordingly,

this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner of Social Security ("Commissioner") for further proceedings consistent with this Report and Recommendation.

## FACTUAL AND PROCEDURAL HISTORY

On March 2, 2006, Plaintiff filed an application for DIB, alleging disability as of February 1, 2006. *See* Dkt. 13, Administrative Record ("AR") 103-08, 665. The application was denied upon initial administrative review and on reconsideration. *See* AR 72, 73, 665. On November 4, 2008, ALJ Helen F. Strong found Plaintiff not disabled. AR 11-23, 665, 11-23. The Appeals Council denied Plaintiff's administrative appeal, making ALJ Strong's opinion the final decision of the Commissioner. *See* AR 1-5, 665, 775. Plaintiff appealed to the United States District Court for the Western District of Washington, which remanded the case for further proceedings. *See* AR 477-80; *Carlson v. Astrue*, 2:10-CV-1762-MJP-JPD (W.D. Wash.).

On remand, Plaintiff received a second hearing before ALJ Cheri L. Filion, who again found Plaintiff not disabled. AR 665-79, 689-747. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council, making ALJ Filion's decision the final decision of the Commissioner. *See* AR 649-53; 20 C.F.R. § 404.981, § 416.1481. Plaintiff now appeals ALJ Filion's decision finding Plaintiff not disabled.[1]

In Plaintiff's Opening Brief, Plaintiff maintains the ALJ erred by: (1) finding Plaintiff's sleep apnea and back condition were not severe impairments at Step Two; (2) providing legally insufficient reasons for rejecting medical source opinions; (3) failing to provide clear and convincing reasons for finding Plaintiff not entirely credible; (4) failing to provide germane

---

[1] When stating "the ALJ" or "the ALJ's decision" throughout this Report and Recommendation, the Court is referring to ALJ Filion and her decision.

reasons for rejecting lay testimony; and (5) finding Plaintiff capable of performing her past relevant work at Step Four. Dkt. 15, pp. 1-2.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

### I. Whether the ALJ erred by finding Plaintiff's sleep apnea and back pain did not constitute severe impairments at Step Two.

Plaintiff asserts the ALJ erred in failing to find Plaintiff's sleep apnea and back pain were severe impairments at Step Two. Dkt. 15, pp. 10-13. Step Two of the administration's evaluation process requires the ALJ to determine whether the claimant "has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (1996). An impairment is "not severe" if it does not "significantly limit" the ability to conduct basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). "Basic work activities are 'abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling.'" *Smolen*, 80 F.3d at 1290 (*quoting* 20 C.F.R. §140.1521(b)). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality having 'no more than a minimal effect on an individual[']s ability to work.'" *Id.* (*quoting Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (*adopting* Social Security Ruling "SSR" 85-28)).

A. <u>Sleep Apnea</u>

The ALJ found Plaintiff's sleep apnea was not a severe impairment at Step Two because it did not significantly affect her ability to perform work activities. AR 669. The ALJ stated:

> While mentioned in early treatment notes, sleep apnea virtually vanishes from the record over time. She no longer needed to use a CPAP machine once she lost weight. There is very little objective evidence to support or document this condition and no records in the file with raw data regarding the severity.

AR 669 (internal citations omitted).

The record indicates Plaintiff underwent a sleep study "years before" 2005, which showed Plaintiff suffers from sleep apnea. AR 274. Plaintiff was prescribed Lunesta, a medication used to treat insomnia. AR 276. When seen for a rheumatology consultation in 2006, Plaintiff was assessed to have a sleep disorder and a history of sleep apnea. AR 513. In 2007, Plaintiff was assessed to have obstructive sleep apnea. AR 545. Dr. Stephen Markus, Plaintiff's treating physician, noted Plaintiff never became accustomed to the CPAP machine, and he recommended Plaintiff be seen by a different doctor to determine how her sleep apnea was contributing to her overall exhaustion. AR 543-44.

While Plaintiff was diagnosed with obstructive sleep apnea, Plaintiff does not cite to any records showing her sleep apnea is more than "a slight abnormality having more than a minimal" impact on her ability to work. *See Smolen*, 80 F.3d at 1290; Dkt. 15, pp. 12-13; 17, p. 4. For example, Dr. Markus diagnosed obstructive sleep apnea, but does not include this diagnosis as a reason he finds Plaintiff unable to work. *See* AR 261-62, 1326-27. The record references Plaintiff suffers from fatigue and sleep disturbances; however, there is no indication these problems resulted from Plaintiff's sleep apnea or caused more than minimal limitations on Plaintiff's ability to work. *See* AR 204, 388-98, 402-03.

1    As Plaintiff has not shown her sleep apnea caused more than minimal limitations on her

2 ability to work, the Court finds the ALJ did not err when she found Plaintiff's sleep apnea was

3 not a severe impairment.

4    B.  Back Pain

5    At Step Two, the ALJ also found Plaintiff's lumbar degenerative disc disease to be "not

6 severe" because it did not significantly limit Plaintiff's ability to perform work activities. AR

7 669. The ALJ stated:

> The claimant complained of a long history of back pain. However, in July 2005, she underwent CT scans and x-rays that showed a normal cervical spine and only mild bilateral sacroiliac joint degenerative findings. An x-ray taken in December 2006 revealed possible right SI joint irregularity suggesting possible sacroiliitis. An x-ray from September 2008, however, showed no definite erosive changes at the sacroiliac joints. In September 2012, an MRI of the thoracic spine showed only minimal multiple degenerative disc disease with mild to moderate chronic facet arthropathy. These findings were later and do not relate back to February 2006 to April 2009. They also were when the claimant was working at substantial gainful activity suggesting that any symptoms were not significant enough to prevent all work.

15 AR 669 (internal citations omitted). The ALJ, however, failed to discuss evidence showing

16 additional back diagnoses and functional limitations caused by Plaintiff's back pain. *See* AR 669.

17    The record shows Plaintiff complained of migraines and spine and neck pain after falling

18 down a set of stairs. AR 258. She reported severe low back pain and her symptoms were

19 aggravated by sleeping, reading, and staying in one position for long periods. AR 259. A July

20 2005 CT scan of Plaintiff's lumbar spine and sacroiliac joint ("SI joint") showed mild bilateral

21 SI joint degenerative findings, including marginal sclerosis and left side anterior osteophytes and

22 bilateral SI joint intraarticular gas. AR 252-53. Dr. Markus diagnosed Plaintiff with cervical

23 segmental dysfunction in 2005. AR 273-74, 277, 294. He noted moderate paracervical tenderness

24

REPORT AND RECOMMENDATION - 5

1   and found her range of motion was mildly limited. AR 295. Plaintiff underwent a lumbar

2   puncture. *See* AR 311.

3   When seen at a pain clinic, Plaintiff reported her pain was worst in her SI joints. AR 498.

4   The pain clinic diagnosed Plaintiff with SI joint pain and dysfunction. AR 501. Plaintiff was

5   treated by the Northwest Spine and Sports Physicians, P.C. ("Northwest Spine") for low back

6   and buttock pain. AR 503. She was tender over the right sciatic notch, and had a forward flexion

7   test, pain with an SI joint compression test, and hypermobility. AR 503. Northwest Spine

8   diagnosed Plaintiff with persistent SI joint dysfunction. AR 503. During physical therapy,

9   Plaintiff had increased tenderness in her bilateral SI joints and presented positive symptoms

10  during sacral compression testing. AR 505. Plaintiff reported increased sclerosis into her SI

11  joints, which contributes to her overall discomfort especially with prolonged sitting or standing

12  positions. AR 505.

13  The ALJ's finding at Step Two regarding Plaintiff's back impairment is not supported by

14  the record. The ALJ found Plaintiff's back impairment was "not severe" because the condition

15  "did not significantly affect her ability to perform work activities." AR 669. However, the ALJ

16  failed to discuss significant, probative evidence regarding Plaintiff's back impairments and, as

17  outlined above, the medical records and symptoms reported by Plaintiff provide evidence

18  establishing a severe back impairment and show functional limitations impacting Plaintiff's

19  ability to perform basic work activities. Medical professionals continually noted pain and

20  limitations caused by Plaintiff's SI joint dysfunction and Plaintiff reported limitations, including

21  difficulty sitting or standing for prolonged periods. The ALJ failed to consider this evidence.

22  As the ALJ failed to discuss significant, probative evidence and as the evidence shows

23  functional limitations, the ALJ erred in determining Plaintiff's back impairment was not severe

24

REPORT AND RECOMMENDATION - 6

1 at Step Two. *See Smolen*, 80 F.3d at 1290 (an ALJ "is required to consider the claimant's
2 subjective symptoms, such as pain or fatigue, in determining severity" at Step Two); *Flores v.*
3 *Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (an ALJ "may not reject significant probative
4 evidence without explanation"). The Court concludes Plaintiff's back pain is a severe
5 impairment.

6 "[H]armless error principles apply in the Social Security context." *Molina v. Astrue*, 674
7 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless, however, only if it is not prejudicial to the
8 claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v.*
9 *Commissioner, Social Security Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*, 674
10 F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific
11 application of judgment" by the reviewing court, based on an examination of the record made
12 "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at
13 1118-1119 (*quoting Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (quoting 28 U.S.C. § 2111)).
14 If the ALJ accounts for all Plaintiff's limitations in assessing the RFC, the Step Two error is
15 harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

16 When reviewing the RFC, the Court cannot determine if the ALJ properly considered
17 Plaintiff's back impairment and the associated limitations caused by this impairment. Evidence
18 in the record indicates Plaintiff's back impairment resulted in severe pain and limited her ability
19 to sit and stand. Had the ALJ properly considered Plaintiff's back impairment at Step Two, the
20 RFC assessment and hypothetical question posed to the vocational expert, D.T. North, may have
21 included additional limitations. As the ALJ's failure to properly consider Plaintiff's back
22 impairment at Step Two and throughout the remaining sequential evaluation process affects the
23 ultimate disability decision, it is not harmless.

24

1  **II.     Whether the ALJ erred in assessing the medical opinion evidence, Plaintiff's credibility, lay witness evidence, and Step Four of the sequential evaluation process.**
2  

3  The ALJ's error at Step Two requires remand to the Commissioner for proper
4  consideration of Plaintiff's severe impairments and to reconsider each of the remaining steps in
5  the administrative process incorporating Plaintiff's back condition and the work limitations
6  possibly caused by this additional severe impairment. As the ALJ's error at Step Two impacts all
7  aspects of the ALJ's decision, the ALJ is instructed to re-evaluate this entire matter on remand,
8  completing each step of the sequential evaluation process.
9  When re-evaluating this entire matter on remand, the ALJ must correct the errors
10 included in her evaluation of: (A) Dr. West's opinion; (B) Plaintiff's activities of daily living;
11 (C) opinions provided after Plaintiff's date last insured; (D) Dr. Suh's opinion; (E) psychiatric
12 opinions discussing physical conditions; and (F) Dr. Berner's opinion.
13     A.   Dr. West
14 Plaintiff alleges the ALJ's RFC is inconsistent with the opinion from examining
15 physician Dr. Raymond West, M.D. Dkt. 15, p. 17. Dr. West opined, in relevant part, Plaintiff
16 could lift and carry 15 pounds at least occasionally. AR 327. The ALJ gave significant weight to
17 Dr. West's opinion, but did not discuss Dr. West's finding that Plaintiff was limited to lifting and
18 carrying 15 pounds occasionally. *See* AR 675. Further, the ALJ did not incorporate this
19 limitation into the RFC. AR 671. Rather, in the RFC, the ALJ limited Plaintiff to lifting and
20 carrying 20 pounds occasionally. AR 671.
21 The ALJ "may not reject significant probative evidence without explanation." *Flores*, 49
22 F.3d at 570-71 (internal quotations omitted). The "ALJ's written decision must state reasons for
23 disregarding [such] evidence." *Id*. at 571. The ALJ failed to provide any discussion regarding Dr.
24

West's opinion as to Plaintiff's lifting and carrying limitations; thus, the Court cannot determine if the ALJ properly considered these limitations or simply ignored the evidence. Accordingly, the ALJ erred by failing to explain the weight given to the lifting and carrying limitations opined by Dr. West. If the ALJ properly considered Dr. West's opinion, the RFC could change. Further, the ultimate non-disability determination could change because the ALJ found Plaintiff could perform her past relevant work as a bookkeeper, which requires occasionally lifting and carrying 20 pounds. *See* AR 678. Therefore, the ALJ's failure to properly consider Dr. West's entire opinion is harmful error. On remand, the ALJ must re-evaluate Dr. West's entire opinion, including the opined lifting and carrying limitations.

### B. Plaintiff's Daily Activities

The ALJ found Plaintiff lacked credibility in part because her activities of daily living were not as limited as one would expect given her complaints of disabling impairments. AR 673. The ALJ also gave little weight to treating physician Dr. Stephen Markus's opinion, in part, because Plaintiff's actual daily activities did not support Dr. Markus finding Plaintiff was limited to only a few hours of basic activities per day. AR 676.

Regarding daily activities, the record shows Plaintiff helps her son get to school and with his homework when she is able, performs light housekeeping, does light bookkeeping a few hours per week, prepares one to two meals per week, and does some laundry. AR 204-05, 320, 1020. She reported her average day is spent doing a little work around the house, looking after her personal needs, and taking care of her son. AR 324. In February of 2009, Plaintiff stated she was working about eight hours per week. AR 1210. In April of 2012, Plaintiff reported working 32 hours per week; however, at the time of the hearing, Plaintiff testified she was not working. AR 700, 1036.

1    A review of the records cited by the ALJ shows Plaintiff's activities of daily living are
2 limited. Substantial evidence does not support finding Plaintiff engages in activities of daily
3 living for more than a few hours per day. Therefore, Plaintiff's activities of daily living are not
4 inconsistent with her complaints of disabling impairments or inconsistent with Dr. Markus's
5 opinion. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (recognizing "disability
6 claimants should not be penalized for attempting to lead normal lives in the face of their
7 limitations"). Accordingly, the ALJ's decision to find Plaintiff not entirely credible and to give
8 little weight to a portion of Dr. Markus's opinion because Plaintiff's actual daily activities are
9 less limited is not supported by substantial evidence. On remand, the ALJ shall not discredit
10 Plaintiff's testimony or Dr. Markus's opinion based on Plaintiff's activities of daily living.

11    C.  Opinions after Plaintiff's Disability Period

12    In June of 2013, Dr. Markus submitted a letter stating Plaintiff would miss up to 50% of
13 work days, and treating psychiatrist Dr. Jon Berner submitted a letter stating Plaintiff would miss
14 more than two days of work per month. AR 1327-28. The ALJ gave little weight to the two
15 letters in part because the letters were written more than seven years after the alleged onset date
16 and more than four years after Plaintiff returned to substantially gainful work activity. AR 676-
17 77. Medical reports "containing observations made after the period for disability are relevant to
18 assess the claimant's disability" during the disability period. *Lester v. Chater*, 81 F.3d 821, 832
19 (9th Cir. 1996); *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988); *Kemp v. Weinberger*, 522
20 F.2d 967, 969 (9th Cir. 1975). Because such reports "are inevitably rendered retrospectively,"
21 they "should not be disregarded solely on that basis." *Smith*, 849 F.2d at 1225 (*citing Bilby v.*
22 *Schweiker*, 762 F.2d 716, 719 (9th Cir. 1985)). As the ALJ cannot disregard the letters from Drs.
23 Markus and Berner solely because the opinions were dated after Plaintiff's disability period, the
24

Court finds this reason for rejecting the June 2013 letters is improper. On remand, the ALJ shall not give little weight to the June 2013 letters because the letters were dated after Plaintiff's disability period.

D. Dr. Suh's Opinion

The ALJ gave little weight to the May 2006 opinion from examining psychiatrist Dr. Sang Suh, M.D. AR 677. Dr. Suh opined:

> Although [Plaintiff] is not experiencing full manic mania, there is an underlying intensity, irritability, and moodiness that still makes it very difficult for her to function when one considers the rest of her symptoms including the depression, anxiety, her inability to concentrate, and the very little stamina. Until further *stability*, I believe that her ability to maintain gainful employment will be markedly limited.

AR 321 (emphasis added).

First, the ALJ gave little weight to Dr. Suh's opinion because the statement regarding "stability" implied his opinion was "temporary and not intended to be used as an opinion for complete and permanent disability." AR 677. The ALJ points to no evidence in Dr. Suh's opinion indicating Plaintiff's instability is temporary. *See* AR 667. Dr. Suh does not opine as to the duration of Plaintiff's impairments and limitations. *See* AR 319-21. The evaluation shows Plaintiff has tried a number of different medications and there is no indication there is a medication which will stabilize her bipolar disorder. *See* AR 319. As the evidence does not show Dr. Suh found Plaintiff's limitations to be temporary, the ALJ's decision to give little weight to Dr. Suh's opinion because it was impliedly temporary is not supported by substantial evidence.

Second, the ALJ found Dr. Suh's opinion was internally inconsistent. AR 677. An ALJ need not accept the opinion of a physician if the opinion is inadequately supported "by the record as a whole" or his clinical findings. *See Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d

1190, 1195 (9th Cir. 2004). Dr. Suh's opinion is not internally inconsistent. Dr. Suh conducted a mental status examination ("MSE") which produced mostly normal results. AR 320-21. However, Dr. Suh noted Plaintiff is "preoccupied, intense, and somewhat irritable speaking in a soft monotonal voice with some latency of response. Her mood is agitated and depressed with affect that is highly labile." AR 320. Dr. Suh found Plaintiff's ability to maintain gainful employment was markedly limited based on her instability and underlying intensity, irritability, and moodiness. *See* AR 320-21 All these findings are supported by the "general" findings included in the MSE. *See* AR 320-21. As Dr. Suh's opinion is supported by his MSE findings, the ALJ's second reason for giving little weight to Dr. Suh's opinion is not supported by substantial evidence.

Accordingly, the Court finds the ALJ did not provide specific, legitimate reasons supported by substantial evidence for giving little weight to Dr. Suh's opinion. *See Lester*, 81 F.3d at 830-31 (when an examining physician's opinion is contradicted, that opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record"). On remand, the ALJ must re-evaluate Dr. Suh's opinion and shall not discredit the opinion because Dr. Suh's opinion implied Plaintiff's condition is temporary or because his opinion was internally inconsistent.

E. Discounting Psychiatric Opinions Discussing Physical Conditions

The ALJ also found the opinions of both Drs. Suh and Berner to be unreliable because they based their conclusions on a combination of physical and psychiatric conditions. AR 677. The ALJ stated the two doctors' conclusions "rested at least in part on an assessment of impairments outside their area of expertise." AR 677. Both Drs. Suh and Berner are medical doctors, having obtained their M.D. See AR 311, 319. "Although a medical doctor's area of

specialty is relevant, a physician with a doctoral medical degree (M.D.) is qualified to assess a claimant's physical functional limitations." *Fischer v. Colvin*, 2013 WL 5437571, *9 (W.D. Wash. Sept. 27, 2013). As both Drs. Suh and Berner underwent medical school training to obtain M.D.s, further training in the specialty of psychiatry does not deprive Drs. Suh and Berner of the capabilities they had as M.D.s prior to their specialized training. *See id*. Accordingly, the ALJ erred by finding the opinions of Drs. Suh and Berner to be unreliable because their opinions were outside their area of expertise. When re-evaluating the opinions of Drs. Suh and Berner on remand, the ALJ shall not discredit the opinions because they were based on physical limitations.

### F. Unreadable Treatment Notes

The ALJ determined Dr. Berner's opinion was entitled to little weight, in part, because his opinion was inconsistent with his treatment notes. AR 676. In addition, the ALJ found Dr. Berner's treatment notes were unreadable in places, which undermined their reliability. AR 676. The ALJ does not explain why the illegibility of the treatment notes undermines the reliability of the records. Furthermore, this is not a proper reason to reject a treating doctor's opinion. *See Mansour v. Astrue*, 2009 WL 272865, *7 (C.D. Cal. Feb. 2, 2009) ("the ALJ's finding that Dr. Samaan's treatment notes were illegible, and thus "virtually worthless," considered in combination with his conclusion that Dr. Samaan's opinion was unsupported by any medical findings, should have triggered the ALJ's duty to seek further development of the record to determine the basis of Dr. Samaan's findings); *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001) ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry."); *Miller v. Heckler,* 756 F.2d 679, 680–81 (8th Cir. 1985) (finding the ALJ failed to develop evidence from the claimant's treating source where the record contained handwritten

entries that were in large part illegible); *Cutler v. Weinberger,* 516 F.2d 1282, 1285 (2nd Cir. 1975) ("Where the medical records are crucial to the claimant's claim, illegibility of important evidentiary material has been held to warrant a remand for further clarification and supplementation.").

Here, the ALJ found Dr. Berner's opinion was not supported by his treatment notes, yet found him unreliable because portions of his treatment notes were not legible. AR 676. The ALJ did not clarify how she determined Dr. Berner's opinion was inconsistent with his treatment notes when she stated the notes were unreadable. The ALJ also erred by citing "his treatment notes are unreadable in places, further undermining their reliability" as a reason to give little weight to Dr. Berner's opinion. AR 676. On remand, the ALJ should re-evaluate Dr. Berner's opinion and identify the conflict between finding the treatment notes were both inconsistent with Dr. Berner's opinion and unreadable. She should also determine if the record should be further developed in light of the illegibility of the treatment notes.

**III.    Whether the case should be remanded for an award of benefits.**

Plaintiff argues this case should be remanded for an award of benefits. Dkt. 15, p. 18. The Court may remand a case "either for additional evidence and findings or to award benefits." *Smolen*, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit created a "test for determining when evidence should be credited and an immediate award of benefits directed[.]" *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding

issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

The Court has determined the ALJ must re-evaluate the evidence in light of Plaintiff's back impairment. Further, based on the above identified errors, issues remain which must be resolved concerning Plaintiff's credibility and the medical evidence. Therefore, remand for further administrative proceedings is appropriate.

## CONCLUSION

Based on the above stated reasons, the undersigned recommends this matter be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further proceedings consistent with this Report and Recommendation. The undersigned also recommends judgment be entered for Plaintiff and the case be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on May 6, 2016, as noted in the caption.

Dated this 20th day of April, 2016.

David W. Christel
United States Magistrate Judge